```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
TAMAICA BREWER o/b/o S.B., a minor,

                       Plaintiff,                08-CV-0518MAT

v.                                               DECISION
                                                 and ORDER
MICHAEL ASTRUE,
Commissioner of Social Security,

                       Defendant.
_____
```

## INTRODUCTION

Plaintiff, Tamaica Brewer ("Brewer"), on behalf of S.B., a minor, filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Insurance ("SSI"). On December 4, 20008, the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and on March 6, 2009, plaintiff cross-moved for judgment on the pleadings.

For the reasons that follow, I find that substantial evidence supports the decision of the ALJ. Accordingly, plaintiff's motion for judgment on the pleadings is denied and defendant's motion for judgment on the pleadings is granted.

BACKGROUND

On March 21, 2005, plaintiff filed an application for SSI on behalf of her 14 year old daughter, S.B., alleging that S.B. had been disabled since July 31, 2003. Tr. 57-59) The application was denied initially on May 31, 2005. (Tr. 53) Plaintiff requested a hearing which was held on August 23, 2007 at which plaintiff and her daughter appeared before an Administrative Law Judge ("ALJ") and was represented by counsel. (Tr. 188-213) By decision dated September 10, 2007, the ALJ found S.B. was not disabled. (Tr. 14-25) Plaintiff requested review by the Appeals Council. The decision of the ALJ became final when the Appeals Council denied review on May 9, 2008. (Tr. 5-7) Plaintiff commenced this action on July 14, 2008 claiming that she was disabled by Attention Deficit Hyperactivity Disorder ("ADHD") and mental retardation.

A. Medical Background

The record indicates that S.B. was first diagnosed with ADHD in 2001 by Dr. Adegbite at the Beeman Clinic who prescribed Adderall. (Tr. 135) S.B. was evaluated on May 30, 2002 by her school in compliance with the New York state requirement to re-evaluate students in Special Education every three years. At that time, S.B. was classified as "Speech Impaired" and was repeating Kindergarten. (Tr. 95) Testing showed S.B.'s cognitive

abilities to be within the average range of intelligence but she showed "severe receptive/expressive vocabulary delays, severe receptive language delays, moderate expressive language delays and mild to moderate speech unintelligibility." (Tr. 95) S.B.'s educational goals were to focus on her receptive and expressive language skills. (Tr. 95)

S.B. began treatment at the Monsignor Carr Institute Children's Clinic in Niagra Falls, New York in July, 2003 for counseling and treatment of ADHD. (Tr. 114) Dr. Paul Fazekas examined S.B. in September, 2004 and described her as "cooperative" with appropriate eye contact. He noted that S.B. did exhibit some fidgeting and mild hyperactivity but found no abnormal neurological movements. (Tr. 146) He found her thought processes to be "logical, coherent and relevant" and described her attention and concentration as "fair." (Tr. 136) He concluded that S.B. had "low average to average intelligence" and confirmed the diagnosis of ADHD and discussed the possibility of changing the medication in September, 2004 to try something other than Adderall. (Tr. 136) In 2005, he changed the prescription to treat ADHD to Metadate. (Tr. 176)

On April 5, 2005, a special education teacher for S.B. completed a New York State Officer of Temporary and Disability Assistance Teacher Questionnaire regarding S.B. (Tr. 60-67) At

the time, S.B. was in the third grade and the teacher considered her reading, writing and math skills to be at the first to second grade level. (Tr. 60)  S. B. received support services in school including a consultant teacher, speech/language therapy and a teaching assistant.  The evaluating teacher noted that S.B. needed a "great deal of support to complete tasks" and that she was "reading and writing below grade level." (Tr. 61) Although S.B. had no problems with classroom and social functions such as taking turns, playing cooperatively or changing activities, she had the most difficulty carrying out multi-step instructions, paying attention and completing her work. (Tr. 62)  S.B. spoke well and interacted with others and had no troubles with gross or fine motor skills. (Tr. 64)  S.B.'s speech teacher confirmed that while her speech is intelligible and responds appropriately to questions, she was severely delayed in her vocabulary and oral expression. (Tr. 68)

The Individualized Education Program for the 2004-2005 school year indicated that S.B. would continue to receive extra support from consultant teacher, speech and language therapy and from a teaching assistant. (Tr. 78)  S.B. was described as having a "significant delay in reading decoding, reading comprehension and development in subject and skill areas." (Tr. 79)  Her rate of progress was described as "slow" and she was described as having

a "multi-sensory learning style." (Tr. 79)  This plan indicated that S.B.'s social and emotional as well as physical levels and abilities were within age expectations. (Tr. 80)

Dr. Thomas Ryan, Licensed Psychologist, conducted an independent intelligence evaluation of S.B. on May 16, 2005. (Tr. 142-145)  Although S.B. was prescribed Adderall, her mother had not given it to her for a week prior to the evaluation. (Tr. 142) Dr. Ryan found that S.B. had speech and language skills "slightly below age expectations" but that she recalled and understood instructions, worked with some reflection and deliberation, and was cooperative. (Tr. 143)  S.B. scored a 70 on a full scale I.Q. test placing her intellectual functioning at a "borderline range." (Tr. 143)  Her reading and direct admission skills were in the middle of the second grade level and her math skills were limited to simple addition and subtraction. (Tr. 144) S.B. could bathe, dress and groom herself and was responsible to wash dishes and clean up.  She was allowed to navigate her neighborhood independently and she could follow and understand most age appropriate directions, complete most age appropriate tasks and had the ability to maintain social behavior. (Tr. 144) She was diagnosed with "borderline intellectual functioning" and recommended to continue with the psychological and psychiatric treatment and with her current educational placement. (Tr. 144)

Dr. Tav Jiva also conducted an independent medical examination of S.B. on May 15, 2005. Dr. Jiva reported that S.B. had a good to fair prognosis for her diagnoses of ADHD and learning disability but that there were no physical limitations and S.B. could participate in all age related social, educational and recreational activities. (Tr. 146-149)

Dr. P. Harar, a State Agency physician, reviewed the record on May 31, 2005, and opined that S.B. was not disabled. (Tr. 150, 151-156) Dr. Harar stated that S.B.'s impairments did not meet or equal any Listing (Tr. 151) Dr. Harar noted that she had borderline intelligence and language skills proportionate to her I.Q. and was in special education. (Tr. 153) S.G. was in third grade functioning at the "1.6 to 2.0 grade level." (Tr. 153) Dr. Harar concluded that S.B. had a less than marked limitations in acquiring and using information and in attending and completing tasks. (Tr. 153) He further found no limitations with interacting and relating with others, moving about and manipulating objects, caring for herself, health and physical well-being. (Tr. 153)

In her March 23, 2007 progress report on meeting her goals in her Individualized Education Program, S.B. was reported to be progressing satisfactorily in her study skills, goals of writing paragraphs, proper punctuation and editing in writing skills,

speech and goals of solving multiplication problems that involve double digits, regrouping and multi-step word problems in her goals for math. (Tr. 163-164) S.B. was making some progress towards her reading goals to improve to a fourth grade reading level. (Tr. 163)

B. <u>Non-Medical Background</u>

S.B. testified that she took medication to help her concentrate while attending school. (Tr. 192-193) She noted that the medication made her sleepy. When questioned about her grades, S.B. noted that she gets high grades in social studies and science, 72 and 82 and low grade in math, around 50. (Tr. 193-194) S.B. testified that she has never been disciplined for behavior problems at school and that she had friends in school and near her cousin's house. (Tr. 197) S.B. also testified that she had trouble at times reading and comprehending what she has read but that she can remember what she read. (Tr. 201)

Brewer testified that S.B. was initially diagnosed with ADHD at three years old after she was hyperactive and delayed in speech. (Tr. 206) S.B. saw a counselor at Monsignor Carr once a week and the doctor who prescribed her medication once a month. (Tr. 207)

DISCUSSION

Pursuant to 42 U.S.C.§ 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980). The statutory standard for children seeking SSI benefits based on disability is

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 1382c(a)(3)(C)(1).

In evaluating disability claims in children, the Commissioner is required to use the three step process promulgated in 20 C.F.R. §§ 416.924. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" or combination of impairments. Third, the Commissioner must determine whether the impairment or combination of impairments correspond with one of the conditions presumed to be a disability by the Social Security Commission, that the impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the listings. 20 C.F.R. § 416.924

In addition, the regulations provide for a single method for determining functional equivalence based on domains of functioning. 20 C.F.R. § 416.926a(b)(1). A child's functional limitations will be evaluated in the following six domains:

(i)     Acquiring and using information;

(ii)    Attending and completing tasks;

(iii)   Interacting and relating with others;

(iv)    Moving about and manipulating objects;

(v)     Caring for yourself; and

(vi)    Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i-iv). A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a.

The ALJ followed the three step procedure. In his decision dated September 10, 2007, the ALJ found that plaintiff (1) had not engaged in substantial gainful activity; (2) suffered from ADHD, borderline intellectual functioning, and a learning disability; and (3) did not have an impairment that meets or equals one of the listed impairments listed in Appendix 1, subpart P, Regulation No. 404. (Tr. 15-28)

Plaintiff alleges first that the ALJ committed reversible error for failing to obtain a medical opinion regarding medical equivalency. Second, she contends that the ALJ did not have substantial evidence to support his finding that plaintiff did not have a marked or extreme limitation in the functional domains of "acquiring and using information" and "attending and completing tasks." Although plaintiff acknowledges that the ALJ mentioned the statements of S.B.'s third grade teachers, she contends that the ALJ failed to adequately consider these written teacher statements. Finally, plaintiff argues that the record contains other evidence of speech and language delays and that S.B.'s reading comprehension and decoding skills are poor further support her contention that S.B. has marked or extreme limitations. I find that there is substantial evidence to support the ALJ decision.

A.  <u>Medical Opinion</u>

Plaintiff relies on Social Security Ruling 96-6p to support her assertion that the ALJ improperly failed to obtain a medical opinion from a medical expert regarding medical equivalency. SSR 96-6p provides that the ALJ must obtain an updated medical opinion from a medical expert:

> 1. When no additional medical evidence is received, but in the opinion of the administrative law judge, of the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a

-10-

> judgment of equivalence may be reasonable; or
>
> 2. When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Neither situation considered by SSR 96-6p is present in this case. First, the record does contain an opinion from a medical expert that no Listing was met or equaled. Dr. Harar, the State Agency physician, reviewed the record on May 31, 2005 and concluded that S.B. was not disabled. (Tr. 37, 150-156) Specifically, Dr. Harar found that S.B.'s impairments did not meet or medically or functionally equal any Listing determining that S.B. had a less than marked limitation in acquiring and using information and in attending and completing tasks. (Tr. 151, 153)

The opinions of State Agency physicians are considered to be expert opinions of non-examining medical sources. 20. C.F.R. § 416.927(f). The opinions of non-examining physicians can constitute substantial evidence when, as here, they are consistent with other medical evidence of record. <u>Diaz v. Shalala</u>, 59 F.3d 307, 313 n. 5 (2d Cir. 1995).

Nor does Plaintiff meet the second criteria of SSR 96-6b. Neither Plaintiff nor the record present any additional medical

evidence received after Dr. Harar's findings that could be expected to change his opinion.

C. <u>Marked Limitations</u>

Plaintiff next argues that the ALJ improperly found that S.B. did not have marked limitations in the domains of acquiring and using information and in attending to and completing tasks. The domain of acquiring and using information addresses how well a child learns information and how well the child uses the information that she has learned. 20 C.F.R. § 416.926a(g) The ALJ correctly stated that S.B.'s IQ was borderline, she was learning disabled, performed below grade level, and received special assistance in school. (Tr. 23) In addition, the ALJ took note that S.B.'s teachers reported that S.B. needed a great deal of support to complete tasks. (Tr. 23) However, the ALJ also took into account Dr. Ryan's report that S.B. understood and recalled instructions during testing, worked with reflection, and was generally deliberate, orderly and self-correcting. (Tr. 23) While the record shows S.B. to be behind grade level, it also shows that with support, she is learning and making progress in school as was confirmed by Dr. Jiva. (Tr. 146) Thus, there is substantial evidence to support the ALJ's conclusion that S.B. did not have a marked or extreme limitation in the domain of acquiring and using information.

Similarly, the ALJ properly found that S.B. did not have a marked or extreme limitation in the domain of attending and completing tasks. The ALJ observed that S.B. required medication only when she was in school and that her medications were effective in helping her pay attention. (Tr. 24, 192, 207) The ALJ took note of Plaintiff's testimony that S.B. would not remember steps four through five of a five step instruction. However, he questioned whether it was even unusual for a 12 year old to follow through with these multiple steps. (Tr. 24) Dr. Ryan observed that S.B. understood and recalled instructions, she was able to work deliberately, and was self-correcting. (Tr. 143) He specifically found that S.B. was able to attend to, follow and understand age-appropriate directions, complete tasks and had the ability to maintain appropriate behavior. (Tr. 144) Although S.B. had difficulty learning, she was able to ask questions, request assistance, learn danger and take precautions. (Tr. 144)

There is substantial evidence in the record to support the ALJ conclusion that S.B. did not have one extreme limitation nor two marked limitations as required to find disability under 20 C.F.R. §416.926a. Accordingly, the ALJ properly found that S.B. did not functionally meet or equal any Listing.

CONCLUSION

I find substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the decision of the Commissioner denying plaintiff's disability claim is affirmed, the plaintiff's motion for summary judgment is denied, the defendant's motion for judgment on the pleadings is granted and the complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
   MICHAEL A. TELESCA
United States District Judge

DATED:    Rochester, New York
          June 2, 2010